

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2004

# Bright v. Westmoreland

Precedential or Non-Precedential: Precedential

Docket No. 03-4320

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bright v. Westmoreland" (2004). *2004 Decisions.* Paper 355.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/355

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 03-4320
_____

JOHN BRIGHT, Individually and
in his capacity as Administrator
of the ESTATE OF
ANNETTE BRIGHT, deceased,

Appellant

v.

WESTMORELAND COUNTY; TAMI
WHALEN, Individually and in her
capacity as a Probation Officer for
Westmoreland County; RICHARD
YESKO, Individually and in his capacity
as a Probation Officer for Westmoreland
County; ANTHONY C. GUINTA,
Individually and in his capacity as
Probation Supervisor for Westmoreland
County; CITY OF MONESSEN; CARL
FRANZAGLIO, Individually and in his
capacity as a Police Officer for the City
of Monessen; PAUL S. KUNTZ,
Individually and in his capacity as Court
Administrator for the Westmoreland
County Court of Common Pleas; JOHN
PECK, Individually and in his capacity
as District Attorney of Westmoreland
County;  CHARLES KOSCHALK

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
(D.C. No. 03-cv-01072)
District Judge  The Honorable Arthur J.
Schwab

_____

ARGUED MAY 12, 2004

BEFORE: NYGAARD, McKEE, and
CHERTOFF <u>Circuit</u> <u>Judges</u>.

(Filed August 24, 2004)
_____

Peter M. Suwak, Esq. (Argued)
P.O. Box 1
Pete's Surplus Building
Washington, PA 15301
<u>Counsel for Appellant</u>


Thomas P. Pellis, Esq. (Argued)
Meyer, Darragh, Buckler, Bebenek & Eck
114 South Main Street
Greensburg, PA 15601
<u>Counsel for Appellee County of
Westmoreland, et. al.</u>

Thomas P. McGinnis, Esq. (Argued)
Thomas, Thomas & Hafer
301 Grant Street
One Oxford Centre, Suite 1150
Pittsburgh, PA 15219
<u>Counsel for Appellee City of Monessen,
et. al.</u>

Mary E. Butler, Esq. (Argued)
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
Counsel for Paul S. Kuntz, etc.

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

## I.

John Bright appeals the dismissal of his complaint. Bright's claims arose when Charles Koschalk murdered one of Bright's daughters, Annette. At the time of the murder, Koschalk was on probation after pleading guilty to corrupting the morals of Annette Bright's sister. The District Court dismissed all of Bright's claims. We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's order. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## II.

In his brief, Bright focused all of his argument, except for a single footnote, on the merits of the District Court opinion. That single footnote, however, raises a procedural impropriety underlying the District Court's opinion that undermines the legitimacy of the dismissal order. The relevant footnote asserts that during a preliminary case conference, which occurred before the due date for or the filing of Bright's response to the appellees' motions to dismiss,[1] the District Court indicated that it planned to dismiss Bright's complaint on the basis of an unpublished District Court decision. At this conference, the District Court also requested that in lieu of a reply brief the appellees file a consolidated statement of position. The attorneys confirmed at oral argument that in response to the District Court's request they submitted a proposed opinion and order of court, which the District Court adopted nearly verbatim, as its opinion and order. Therefore, Bright asserts that he is appealing an order supported by an opinion that were ghostwritten by appellees' counsel.

At our request, counsel for the appellees supplied us with a copy of the proposed memorandum opinion and order that they had submitted to the District

---

[1] Though not spelled out by Bright in his brief, our review of the District Court docket indicates that a case conference was scheduled to be held on September 17, 2003, that the appellees' motions to dismiss were filed on September 12 and 16 and Bright's response to those motions was not filed until September 26. This sequence of events in consistent with Bright's argument.

2

Court.[2]  This proposed opinion is nearly identical to the opinion filed by the District Court.  Other than minor grammatical and stylistic edits, the District Court made only two substantive changes.   First, in the analysis section of the opinion, the District Court struck a single sentence from the appellees' proposed opinion.  Second, the District Court added a section that dismissed the claims against Koschalk for lack of jurisdiction.

Importantly, the District Court did not substantively alter the section in the proposed opinion that dismissed Bright's state law claims based on the Pennsylvania Political Subdivisions Tort Claims Act ("P.S.T.C.A.").  42 Pa. C.S. § 8541 *et seq.* This is significant because nowhere in appellees' motions to dismiss do they argue that Bright's state law claims are barred under the P.S.T.C.A.  The District Court, however, adopted this section of the appellees' proposed opinion without any real modification or explanation, again excepting minor stylistic changes.

---

[2.]The District Court's docket sheet does not indicate that this proposed opinion and order were ever filed and there is no certificate of service attached to the copy of the document that appellees have submitted to us.  Because this document does not appear in any other public filing and it is of central importance to this appeal, we have included a copy of it along with a copy of the District Court's opinion as an appendix to the opinion we have filed.

Bright complains about the District Court's procedure, stating that "[i]t is hard to reconcile this evident overreaching with plaintiff's reasonable expectations as a litigant for a fair and independent judicial review of his claim."  Appellant's Brief at n.2.   We agree and will reverse and remand the cause to the District Court with orders to engage in an independent judicial review of Bright's claims and the appellee's motion to dismiss, and, should it again decide to dismiss, for it to prepare an opinion explaining the reasons for its order.

### III.

We have held that the adoption of proposed *findings of fact and conclusions of law* supplied by prevailing parties after a bench trial, although disapproved of, is not in and of itself reason for reversal.  *See Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 572 (1985) ("[E]ven when the trial judge adopts the findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."); *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1215-16 (3d Cir. 1993) (disapproving of the verbatim adoption of proposed findings of fact but acknowledging the rule announced in *Anderson* and noting that there was "no indication in the record that the district court was unfamiliar with the testimony or exhibits or that it was using the proposed findings as a crutch; if [there were such an indication] we might view the matter differently").  However, we made clear that the findings of fact adopted by the court must be the result of the trial judge's

3

independent judgment. *Pa. Envtl. Def. Found.: (PEDF) v. Canon-McMillian Sch. Dist.*, 152 F.3d 228, 233 (3d Cir. 1998) (citing with approval *Odeco, Inc. v. Avondale Shipyards, Inc.* 663 F.2d 650, 652-53 (5th Cir. 1981)). "The central issue is whether the district court had made an independent judgment." *Id.*

Here, however, we are not dealing with *findings of fact.* Instead, we are confronted with a District Court *opinion* that is essentially a verbatim copy of the appellees' proposed opinion. This fact, even standing alone, would be enough for us to distinguish the holdings in *Anderson* and *Lansford-Coaldale.* We agree with the Court of Appeals for the Fourth Circuit's observation that:

> There is authority for the submission to the court of proposed findings of fact and conclusions of law by the attorneys for the opposing parties in a case, and the adoption of such of the proposed findings and conclusions as the judge may find to be proper. . . . But there is no authority in the federal courts that countenances the preparation of the opinion by the attorney for either side. *That practice involves the failure of the trial judge to perform his judicial function.*

*Chicopee Mfg. Corp. v. Kendall Co.*, 288 F.2d 719, 725 (4th Cir. 1961) (emphasis added).

Judicial opinions are the core work-product of judges. They are much more than findings of fact and conclusions of law; they constitute the logical and analytical explanations of why a judge arrived at a specific decision. They are tangible proof to the litigants that the judge actively wrestled with their claims and arguments and made a scholarly decision based on his or her own reason and logic. When a court adopts a party's proposed opinion as its own, the court vitiates the vital purposes served by judicial opinions. We, therefore, cannot condone the practice used by the District Court in this case.

There is, however, an additional reason why a reversal and remand is the appropriate remedy in this case. We have made it clear that the linchpin in using findings of fact, even when they are verbatim adoptions of the parties' proposals, is evidence that they are the product of the trial court's independent judgment. *PEDF*, 152 F.3d at 233. In this case, there is no record evidence which would allow us to conclude that the District Court conducted its own independent review, or that the opinion is the product of its own judgment. In fact, the procedure used by the District Court casts doubt on the possibility of such a conclusion.

According to Bright's unrebutted assertions, the District Court indicated that it was going to grant appellee's motions to dismiss before it even received Bright's response to those motions. Indeed, Bright claims, again without a rebuttal, that he did not have the opportunity to object or even respond to the submitted opinion and order

4

before the District Court adopted them as its own.

Courts and judges exist to provide neutral fora in which persons and entities can have their professional disputes and personal crises resolved. Any degree of impropriety, or even the appearance thereof, undermines our legitimacy and effectiveness. We therefore hold that the District Court's adoption of the appellees' proposed opinion and order, coupled with the procedure it used to solicit them, was improper and requires reversal with a remand for the court to reevaluate the appellees' motion to dismiss in a procedure consistent with this opinion.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BRIGHT, individually and in his, capacity as Administrator of the ESTATE OF ANNETTE BRIGHT, deceased, | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 03-1072 |
| WESTMORELAND COUNTY; TAMI WHALEN, individually and in her capacity as a Probation Officer for Westmoreland County; RICHARD YESKO, individually and in his capacity as a Probation Officer for Westmoreland County; ANTHONY C. GUINTA, individually and in his capacity as Probation Supervisor for Westmoreland County; CITY OF MONESSEN; CARL FRANZAGLIO, individually and in his capacity as a Police Officer for the City of Monessen; PAUL S. KUNTZ, individually and in his capacity as Court Administrator for the Westmoreland County Court of Common Pleas; JOHN PECK, individually and in his capacity as District Attorney of Westmoreland County; and CHARLES KOSCHALK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JUDGE ARTHUR J. SCHWAB |
| Defendants | ) | |

## PROPOSED MEMORANDUM OPINION AND ORDER OF COURT

## INTRODUCTION

This case arises from the tragic death of eight-year-old Annette Bright who was murdered by Defendant Charles Koschalk. (Plaintiff's Complaint ¶22). Koschalk pled guilty to the charge of first-degree murder and was sentenced to life in prison without the possibility of parole. (Plaintiff's Complaint ¶24).

The Plaintiff, John Bright, Annette Bright's father, brings this civil action against all Defendants under the Pennsylvania Wrongful Death and Survival Acts. Plaintiff also asserts claims arising under 42 U.S.C. §1983 against all Defendants except Koschalk. Plaintiff has named as Defendants in this action -- in addition to Defendant Koschalk — Westmoreland County, Tami Whalen and Richard Yesko, individually and in their capacities as Probation Officers for Westmoreland County, Anthony C. Guinta, individually and in his capacity as Probation Supervisor for Westmoreland County, the City of Monessen and Carl Franzaglio, individually and in his capacity as a police officer for the City of Monessen, Paul Kuntz, individually and in his capacity as District Court Administrator for the Westmoreland County Court of Common Pleas and John Peck, individually and in his capacity as District Attorney for Westmoreland County. In Count I of the Complaint, the Plaintiff alleges that all Defendants except for Defendant Koschalk are liable to him under 42 U.S.C. §1983 for allegedly depriving Annette Bright "and her family" of their federally protected constitutional rights. Plaintiff alleges wrongful death and survival action claims against all Defendants except for Defendant Koschalk in Counts II and III of the Complaint. Finally, Plaintiff asserts an assault and battery claim against Defendant Koschalk in Count IV of the Complaint.

This matter comes before the Court for resolution of Motions to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of all Defendants (hereinafter sometimes referred to as "the Moving Defendants) except for Defendant Koschalk. No one has appeared of record in this matter for Defendant Koschalk nor has Koschalk responded to the Complaint.

SZ/80.d    Eb9Z ㄥ6S SlZ    US COURT OF APPEALS 3RD.    SØ:9l b00Z-bl-AUW

## FACTUAL BACKGROUND

Accepting as true, for purposes of the Defendants' Motions to Dismiss, all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom, the factual background giving rise to this case as follows. On or about May 31, 2000, Defendant Koschalk (then approximately 34 years of age) pled guilty to a charge of corrupting the morals of a minor as the result of having spent the night with a 12-year-old female, who is alleged to be related to Annette Bright[1]. (Plaintiff's Complaint ¶¶11 and 12). Defendant Koschalk was placed on probation, which, with credit for time served, was to last until April 30, 2002. (Plaintiff's Complaint ¶12). A specific condition of Koschalk's probation was that he was to have no direct or indirect contact with the twelve-year-old minor female victim nor was he to have any direct or indirect contact with any other minor children without adult supervision. (Plaintiff's Complaint ¶14).

According to Plaintiff's Complaint, after being placed on probation, Defendant Koschalk came under the supervision of the Westmoreland County Adult Probation Department and, in particular, the three individual Defendant Probation Department employees named as Defendants herein. According to the Plaintiff, Koschalk, during the course of his probation, continued to make attempts to carry on an unsupervised relationship with the twelve-year-old female. (Plaintiff's Complaint ¶15).

On May 14, 2001, Probation Officer Tami Whalen observed Koschalk having contact with the twelve-year-old victim in violation of the terms of his probation. (Plaintiff's Complaint

---

[1] The Court notes that in the Plaintiff's Opposition to the Motions to Dismiss, the Plaintiff now identifies Annette Bright as the sister of the 12-year-old victim. It is unclear why, if this statement is true, it did not appear in the Complaint. Regardless of this question concerning the factual averments, for the reasons stated herein, it has no affect on the Court's analysis.

Document #: 375156
7280.0113

3

¶16). Shortly thereafter, on or around May 16, 2001, Probation Officer Whalen prepared a report documenting the unauthorized contact between Koschalk and the twelve-year-old victim. A formal document alleging a parole violation by Koschalk was signed by Probation Officer Yesko for Probation Officer Whalen on June 15, 2001. On June 18, 2001, Probation Supervisor Guinta signed the same document requesting that a final revocation hearing be scheduled for Koschalk. (Plaintiff's Complaint ¶¶18 and 19). A Petition to Revoke Defendant Koschalk's Probation was filed through the District Attorney's office on June 27, 2001. On or about August 6, 2001, the Westmoreland County Court Administrator's office issued a notice that a hearing on the Petition for Revocation of Koschalk's probation was scheduled for August 28, 2001 before the Honorable William J. Ober of the Court of Common Pleas of Westmoreland County, Pennsylvania. Annette Bright was shot and killed by Defendant Koschalk on July 15, 2001, prior to the scheduled hearing on the Petition for Revocation of Koschalk's probation.

Plaintiff claims that approximately three weeks before Annette Bright's murder, he contacted Officer Carl Franzaglio of the City of Monessen Police Department (who had made the arrest precipitating Koschalk's guilty plea on May 31, 2000) and requested that Officer Franzaglio take immediate action, "for the protection of [Plaintiff John Bright's] family," to incarcerate Koschalk. (Plaintiff's Complaint ¶¶26 and 27). Plaintiff alleges that Officer Franzaglio assured him that immediate action would be taken but, claims that nothing occurred to detain Koschalk prior to the events of July 15, 2001. Plaintiff alleges that one of Koschalk's motives for murdering Annette Bright was to retaliate against Plaintiff and his family for efforts they allegedly made to prevent him from seeing "the twelve year old relative/victim" of the incident for which Koschalk pled guilty in May of 2000. (Plaintiff's Complaint ¶28).

MAY-14-2004 16:05      US COURT OF APPEALS 3RD.      215 597 2643      P.10/25

Based on these facts, Plaintiff claims that had the Defendants acted sooner to arrest and incarcerate Koschalk for his probation violations, he would not have had the opportunity to commit the murder of Annette Bright on July 15, 2001. Plaintiff contends that the Probation Department Defendants failed to take timely steps to revoke Koschalk's probation prior to Annette Bright's death. The Plaintiff contends that Officer Franzaglio, and his employer, the City of Monessen, are liable to him as a result of Officer Franzaglio's failure to arrest Koschalk for the alleged probation violation prior to Annette Bright's death. Finally, Plaintiff contends that Defendants Paul S. Kuntz, the Westmoreland County Court Administrator, and John Peck, the District Attorney, are liable to him because they are alleged to have unreasonably delayed the scheduling of Defendant Koschalk's probation revocation hearing.

Defendants Westmoreland County, Tami Whalen, Richard Yesko, Anthony C. Guinta and John Peck have moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Paul Kuntz has joined in the Motion to Dismiss filed on behalf of those Defendants. In addition, Defendants Carl Franzaglio and the City of Monessen have moved to dismiss Plaintiff's Complaint. Briefs in Support of the Motions to Dismiss have been filed and the Plaintiff has responded with a Brief in Opposition to those Motions. Accordingly, this matter is ripe for disposition.

MAY-14-2004 16:05      US COURT OF APPEALS 3RD.                    412 597 2643      P.11/25

## STANDARD OF REVIEW

In considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the light most favorable to the non-movant. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). "In determining whether a claim should be dismissed under Rule 12(b)(6), the Court should only look to the facts alleged in the Complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not proper unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiffs' allegations." *Id.*

The Court is not required to credit or lend credence to "mulled allegations" or "legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 905 (3d Cir. 1997). In ruling on a Rule 12(b)(6) motion, courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations." *Id.* at 907, FN8. "Legal conclusions masquerading as factual conclusions will not suffice to circumvent a motion to dismiss." *Id.* (quoting *Fernandez - Montes v. Allied Pilot Assocs.*, 987 F.2d 278, 284 (5th Cir. 1983)).

Document #: 375156
7280.0113

6

## ANALYSIS

A.  The Plaintiff's Complaint fails to state a cause of action for violation of 42 U.S.C. §1983 under a state created danger theory.

In Count I of the Complaint, the Plaintiff contends that all of the Defendants (except for Defendant Koschalk) are liable to him for alleged violations of 42 U.S.C. §1983. It is apparent from Plaintiff's Complaint, and confirmed by Plaintiff's Brief in Opposition to the Motions to Dismiss, that Plaintiff is attempting to establish the liability of the Defendants by contending that their alleged actions and/or inactions created a danger for Annette Bright that she would not otherwise have faced had the Defendants not acted as alleged. Plaintiff claims that the Defendants are liable for the death of Annette Bright under §1983 based upon the law established by the United States Supreme Court in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998 (1989) and its progeny. The Court finds that the facts alleged in Plaintiff's Complaint do not establish a viable cause of action under 42 U.S.C. §1983 under the Fourteenth Amendment based upon a "state-created danger" theory.[2] The tragic death of the minor, Annette Bright, occurred while she was in the custody of her parents, not a state actor. At no time was she in the custody of any of the Moving Defendants, nor can it be said

---

[2] With regard to Plaintiff's claims against the municipal Defendants, Westmoreland County, the City of Monessen and the various individually named Defendants in their official capacities, those Defendants may only be found liable under §1983 if the constitutional violation at issue was in fact caused by the implementation or execution of a municipal 'policy, statements, ordinance, regulation or decision officially adopted and promulgated by municipal officiales.'" *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 2036-37, 56 L.Ed. 2d 611 (1978). Furthermore, if there is no constitutional violation in the first instance, there can be no §1983 liability, either on the part of an individually named municipal employee, who allegedly committed the constitutional violation, or the municipal entity which employs that employee. *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed 2d 806 (1986). Accordingly, to the extent that Plaintiff's Complaint fails to state a constitutional violation by any of the individually named Defendants, there can be no liability on the part of the municipal entities which employ them.

MAY-14-2004 16:06          US COURT OF APPEALS 3RD.          215 597 2643          P.13/25

that any affirmative act by any of the Moving Defendants made her more vulnerable to the crime committed by Koschalk, a private actor, thus creating a danger.

A state actor generally owes no duty to protect an individual against violence from a third person, since the Supreme Court has determined that the Due Process Clause imposes no duty on a state actor to provide members of the general public with adequate protective services. The Due Process Clause has been interpreted to serve as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. *DeShaney, Id.*

The Supreme Court found, in *DeShaney*, that simply because a state actor releases a person he or she had previously taken into custody, the state actor does not, *ipso facto*, owe a continuing duty to protect the person or others from the person. In *DeShaney*, county officials removed a child from his home, but later returned him to the custody of his abusive father. The father subsequently beat the child to death. The child's mother then sued the county officials claiming that the child's civil rights were violated by their failure to continue to protect the child and by the release of the child from custody. The Court rejected the mother's claims, stating:

> That the State once took temporary custody of [the decedent] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter.
> *DeShaney, Id.* at 201.

Here, the Plaintiff alleges that the Moving Defendants should have taken the affirmative step of arresting and/or incarcerating Koschalk for an alleged probation violation before he murdered Annette Bright. (Plaintiff's Complaint ¶26). Consistent with the Supreme Court's holding in *DeShaney*, however, the fact that the Moving Defendants had been involved with Koschalk's prior arrest and/or his probation did not create any continuing duty on the part of the

Moving Defendants to prevent Koschalk from ever committing any other crime. Were this the law, any time a person is released on probation or parole, every member of the judicial system who had had some knowledge of the person's conviction and/or the terms of his release from incarceration would assume some potential liability should the releasee commit some future crime. This would only serve to harm the rehabilitation process and have a crippling effect on the ability to hire and retain employees of the police forces and criminal justice system. The Plaintiff cannot offer any viable argument that the Moving Defendants' actions placed Annette Bright in a worse position than if they had never arrested Koschalk in the first place.

The Court finds a decision by Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania in a case involving similar allegations to be persuasive. In *Leidy v. Borough of Glenolden,* 2003 WL 21990003 (E.D. Pa. 2003), Gerald Bennett served 11 ½ months in prison for indecent assault and simple assault before being released on parole in March of 1999. As a condition of his parole, Bennett was required to participate in sex offender treatment classes. A bench warrant was issued when Bennett failed to participate in the program. Bennett subsequently appeared at the Glenolden Borough Police Station to surrender himself on the bench warrant. Although a dispatcher advised a Glenolden Borough police officer that the bench warrant existed, a hard copy of the warrant could not be located. As a result, the police advised Bennett that he was being released and suggested that he turn himself in the following day to the Probation Officer. Bennett subsequently left the police station without having been asked for his address which was required for the standard police incident report. Minutes after Bennett left the police station, the Glenolden Borough Police Department was advised that the hard copy of the warrant had been located. Although the Glenolden police

MAY-14-2004 16:06    US COURT OF APPEALS 3RD.    215 597 2643    P.15/25

officer who had been dealing with Bennett immediately went out to search for Bennett, he was unable to locate him. Six days later, Bennett fatally strangled Roxanne Leidy and raped her thirteen-year-old daughter. Leidy and her daughter lived in a nearby apartment building and Bennett resided with them.

The Court, in *Leidy*, granted the Defendants' Motions for Summary Judgment holding, *inter alia*, that the Defendants could not be held liable under the state created danger doctrine because none of the defendants acted to create or increase the danger imposed by Bennett, the parolee, nor were his female victims any more foreseeable as victims than the female public at large. The Court, in *Leidy*, based its extensive analysis primarily upon the Supreme Court's opinion in *DeShaney, Id.* and the decision by the United States Court of Appeals for the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). The Court, in *Leidy*, focused its analysis on the four elements of the state created danger doctrine identified by the Third Circuit in *Kneipp*. Those four factors are:

1. Whether the harm ultimately caused was foreseeable;

2. Whether the state actors acted in willful disregard for the safety of the plaintiff;

3. Whether some relationship existed between the state and the plaintiff; and

4. Whether the state actors used their authority to create an opportunity for harm that would not otherwise have existed.
*Leidy, Id.*

Applying the analysis set forth by the Third Circuit in *Kneipp*, and utilized by Judge Dalzell in *Leidy*, to the facts in the case at bar, the court finds that Plaintiff is unable to satisfy any of the four required elements of a viable state created danger claim.

SZ/9T .d    ƐⱯ9Z ⱫS STZ    ·dⱤS S⅂⅄Ⱬ⅃ddⱯ ⅃O ⱢⱤⴑOϽ Sⴖ    90:9T ⱯØØZ-ⱯT-⅄ⱯW

## 1. Whether the harm ultimately caused was foreseeable?

The Plaintiff argues that because Annette Bright was a minor who was related to the prior 12-year-old victim of Koschalk's morals corruption charge, it was foreseeable that Koschalk could harm the Plaintiff. The Court finds that this is not a reasonable inference. The Plaintiff's factual averments are that Koschalk had pled guilty to corrupting the morals of a minor by keeping the 12-year-old relative with him in a pick-up overnight. The Plaintiff argues in his Opposition that it was foreseeable that Koschalk would commit a future crime based upon his refusal to follow the terms of his probation. (Plaintiff's Opposition at p. 7). While it might be argued that the Moving Defendants could have foreseen Koschalk attempting to continue his illegal contact with the 12-year-old, it cannot reasonably be inferred that the Defendants should have anticipated from Koschalk's behavior with the 12 year old that he would murder an 8 year old relative of that child with whom he had no (or at least is not alleged to have had) prior contact.

The court finds that the Plaintiff's allegations are insufficient for the Court to infer that the Moving Defendants could have foreseen that Koschalk would act against Annette Bright and in such a violent manner. Koschalk's prior crime did not indicate any danger of violence, particularly murder. By contrast, in *Leidy*, Mr. Bennett had been convicted of both simple and indecent assault yet, as the court found, in *Leidy*, it was no more foreseeable that Bennett's freedom would result in Leidy's death than it was that Bennett would commit some crime on a member of the public at large. Likewise, the Court finds here that the Plaintiff's argument that the murder of Annette Bright was a foreseeable and a fairly direct result of the state actors' failure to arrest or prosecute Koschalk sooner is without merit.

Document #: 375156
7280.0113

11

## 2. Whether the state actors acted in willful disregard for the safety of the plaintiff?

The Plaintiff argues that a fact question exists as to whether the Moving Defendants willfully disregarded a danger to the Plaintiff and that he should be allowed the opportunity to develop evidence of willfulness on the part of the Moving Defendants through the discovery process. The court disagrees. There is nothing but bald speculation to support the argument that the failure to arrest or prosecute Koschalk in a more expeditious manner on the probation violation placed Annette Bright in danger of being murdered. In the cases cited by the Plaintiff discussed above, this factor is established by the perpetrator's prior abuse of their eventual victim. In this case, however, Koschalk's prior criminal conduct involved a third person. Thus, it would not be reasonable to infer that Koschalk's actions toward the 12-year-old were threatening to Annette Bright and that the Moving Defendants acted in willful disregard of this foreseeable danger. Therefore, the second of the four factors identified in *Kneipp* is not satisfied.

## 3. Whether some relationship existed between the state and the plaintiff?

The court, in *Leidy*, found that the plaintiffs were unable to establish that some relationship existed between the Glenolden police and the victims of Bennett's crimes. The court found, in *Leidy*, that it was reasonably foreseeable that Bennett could have been a threat to women in Delaware County but that this was not a discrete enough class of potential victims to meet *Kneipp's* requirements. The Plaintiff's allegations herein also fail to meet the third factor. The Plaintiff's allegations show that no relationship existed between Annette Bright and the state, other than the mere mention in the terms of Koschalk's probation that he was not to be alone

with minors. The class of minors is not a discrete class and would be broader than the class of women in Delaware County. This language by no means creates a relationship between Annette Bright and the state.

The Plaintiff argues that because Annette Bright was a minor and a "relative" of the 12-year old victim of Koschalk's prior crime, there was a "special relationship" between Annette Bright and the state. However, the Plaintiff's Complaint does not indicate that any prior relationship existed between the state and Annette Bright. In fact, Plaintiff's Complaint makes no allegation that Annette Bright had any involvement with Koschalk prior to the homicide nor does the Complaint aver or imply any interaction between Annette Bright and any of the Defendants (other than Koschalk on the date of the homicide).

Annette Bright is not alleged to have been a prior victim of a crime committed by Koschalk such as the victims in the cases cited by the Plaintiff, i.e. *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990), *McComb v. Wambaugh*, 934 F.2d 474 (3rd Cir. 1991), or *Ford v. Johnson*, 899 F.Supp. 227 (E.D. Pa. 1995). The state's action, the order concerning Koschalk's terms of probation, does not establish a discrete class of potential victims of which Annette Bright was a member. Thus, the Plaintiff's Complaint fails to meet the requirements of *Kneipp's* third factor.

### 4. Whether the state actors used their authority to create an opportunity for harm that would not otherwise have existed?

The Plaintiff argues that the Moving Defendants' failure to arrest and/or incarcerate Koschalk for violating his probation prior to the murder "emboldened" Koschalk by making him believe that no action would be taken against him. This conclusion would require the Court to

SZ/6I 'd          EÞ9Z Z6S SIZ          'QÅS SꞀⱯƎ𐐑Ꞷ ꓱO ꓕꓤ∩OꓛSꓵ          90:9I  ⱯØØZ-ⱯI-ⱯⱯW

infer that the Plaintiff has read Koschalk's mind. This is not a reasonable inference. Further, the Plaintiff's Complaint details that the Moving Defendants were acting to revoke Koschalk's probation, even if it was not at a pace that the Plaintiff suggests was proper. The cases cited by the Plaintiff for support of his position clearly show that support for the fourth factor is missing in this case. In *Ford, Id., McComb, Id., Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001), the victim was a child placed back into the custody of an abusive parent. Thus, the state actor's exercise of authority placed the victim in the place where the crime could be committed. Likewise, in *Freeman, Id.*, the state actor/chief of police allegedly ordered his officers not to enforce a restraining order against a personal friend. This alleged order allowed the friend to have the ability to murder his estranged wife. In the instant case, the state actors are not alleged to have placed Annette Bright into Koschalk's custody or to have interfered with the enforcement of an order pertaining to Annette Bright. The Moving Defendants' alleged failure to arrest or prosecute Koschalk in a more expeditious manner did not create an opportunity for Koschalk to kill Annette Bright that would not have existed but for their exercise of authority.

Defendants City of Monessen and Franzaglio have presented authority and case law which demonstrate that the Officer did not have the authority to arrest Koschalk for a probation violation. The caselaw cited by Defendants Franzaglio and the City of Monessen indicates that a municipal police officer in Pennsylvania does not have the authority to make a warrantless arrest of a suspected probation violator unless the probation officer requests the officer to make the arrest. *Commonwealth v. Pincavitch*, 214 A.2d 280, 206 Pa.Super. 539 (1965), and *Commonwealth v. Lyons*, 555 A.2d 920, 382 Pa.Super. 438 (1989). Plaintiff's Complaint neither avers nor implies that Officer Franzaglio was requested by a probation officer to arrest

Koschalk. As a result, the Plaintiff is unable to show that Defendants Franzaglio or the City of Monessen, could have acted to create a danger that did not already exist. The Plaintiff's argument that the Officer could have contacted the probation officer and asked for permission based upon the *Lyons, Id.* case turns the Pennsylvania Superior Court's analysis on its head. The court, in *Lyons*, found that the officer derived the power to arrest a probation violator based upon a request for assistance by another law enforcement officer. *Lyons* does not stand for the proposition that a municipal officer can create authority by reporting a violation and asking permission to make an arrest. The Plaintiff has not informed the Court of any legal precedent or support which indicates that Officer Franzaglio could have lawfully made the arrest. The Plaintiff has not informed the court of any legal precedent or support which indicates that Officer Franzaglio could have lawfully made the arrest. Accordingly, Officer Franzaglio had no authority to act in the manner Plaintiff suggests he could have and/or should have acted.[3]

The allegations in Plaintiff's Complaint, even when construed in a light most favorable to the Plaintiff as the non-moving party, fail to show that the Moving Defendants actions and/or omissions created the danger that Defendant Koschalk would commit a crime against Annette

---

[3] To state a viable §1983 claim against an individually named defendant, the plaintiff must set forth facts in his Complaint showing how each such individually named defendant was personally involved in the alleged deprivation of his constitutional rights. *Rode v. Dellaraciprette*, 845 F.2d 1195, 1207 (3d Cir. 1988). The court notes that other than identifying Court Administrator Paul S. Kuntz and District Attorney John Peck as Defendants in the caption, Plaintiff's Complaint fails to otherwise allege how either of those Defendants participated in the alleged constitutional violation. Neither Defendant could be held liable under §1983 in their individual capacities without having personally participated in the alleged constitutional violation. *Rode, Id.* Furthermore, with respect to the other individually named Defendants, except for Defendant Koschalk, the court notes that the allegations of Plaintiff's Complaint do not establish that any of the individually named Defendants (excluding Defendant Koschalk) violated any clearly established law which would require the court to find the individual Defendants qualifiedly immune. The court need not reach this issue, however, as the Plaintiff cannot establish the violation of a constitutional right by the individually named moving Defendants in the first instance.

SZ/TZ˙d    ƐⱭ9Z Ɫ6S STZ         ˙QᴚƐ SⱢⱯƎddⱯ ⅎO ⱮↃ Sꓵ         Ɫ0:9T Ɑ00Z-ⱭT-ⱭⱯⱮ

Bright that did not otherwise exist. Nothing that the Moving Defendants did or did not do placed Annette Bright in more danger than she would have faced had the Defendants never been involved with Koschalk's probation violations. Annette Bright had no constitutional right to be protected from the criminal acts of third persons and, therefore, was not deprived of a constitutional right by any of the Moving Defendants. *See DeShaney, Id.* For these reasons, the Plaintiff's §1983 claims against the Moving Defendants must be dismissed[4].

**B.     The Plaintiff's Wrongful Death and Survival actions fail as a matter of law.**

The Plaintiff also states pendent causes of action against the Moving Defendants for Wrongful Death and Survival. (Plaintiff's Complaint Counts II and III). The Plaintiff's claims against Westmoreland County and the City of Monessen are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq. ("P.S.T.C.A.") The P.S.T.C.A only allows waives municipal immunity as to negligence claims based upon eight narrow exceptions found in 42 Pa.C.S. §8542(b)(1)-(8). The Plaintiff's claims do not fall in any of the exceptions and are, thus, barred.

The Plaintiff's state law claims against the Individual Moving Defendants are also barred by the P.S.T.C.A.     The plaintiffs in the *Leidy* case made state law claims in addition to their *DeShaney* claim. The District Court in *Leidy, Id.,* granted summary judgment as to the state law claims brought against the Borough's employees based upon the P.S.T.C.A. The plaintiffs, in *Leidy,* alleged that the individual officers were liable for negligent infliction of emotional

---

[4] Based upon this same analysis, the lack of any clearly established law which required the individual Moving Defendants to arrest Koschalk would require the Court to find the individuals qualifiedly immune. The Court need not reach this issue, however, as the Plaintiff cannot show a violation of a Constitutional right by these Moving Defendants.

distress. The district court found that the plaintiff's allegations could not support a finding that the individual defendants "intended to violate the law or bring about the harm that resulted to the plaintiffs". *Leidy, Id.* at 17. As a result, the district court found that the provisions of the P.S.T.C.A., 42 Pa.C.S, §§8541-42, 8545, and 8550, barred the plaintiffs' claims. In this matter, the same result is indicated.

The Pennsylvania Wrongful Death and Survival Act, 42 Pa.C.S. §§8301 and 8302 were enacted to allow the survival of viable causes of action for bodily injury to a deceased, beyond the life of the victim. (See generally *Baumgart v. Keene Building Products Corp.*, 430 Pa.Super. 162, 633 A.2d 1189 (1993)). The Wrongful Death and Survival Act did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted. As a result, the Plaintiff here must state all the elements of a valid tort theory and such theory is subject to the defenses to that theory. Thus, if the underlying tort theory is barred by immunity, then the wrongful death or survival claim will fail. In this case, the Plaintiff cannot show for the reasons stated herein.

Any negligence claim against the Moving Defendants would have to meet an exception to the immunity provided in the P.S.T.C.A. The court finds no such exception applicable as to Westmoreland County and/or the City of Monessen. Similarly, as the court found in *Leidy*, the individual Moving Defendants have not been alleged to have knowingly violated a law or intended to cause harm to Annette Bright. As a result, the Plaintiff's claims are barred by the provisions of the P.S.T.C.A.

Accordingly, the Court finds that the Plaintiff's Wrongful Death and Survival Claims against the Moving Defendants should be dismissed for failing to state a claim.

An Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN BRIGHT, individually and in his, )
capacity as Administrator of the ESTATE )
OF ANNETTE BRIGHT, deceased, )
)
Plaintiff )
v. )
) Civil Action No. 03-1072
)
WESTMORELAND COUNTY; TAMI )
WHALEN, individually and in her capacity ) JUDGE ARTHUR J. SCHWAB
as a Probation Officer for Westmoreland )
County; RICHARD YESKO, individually )
and in his capacity as a Probation Officer )
for Westmoreland County; ANTHONY C. )
GUINTA, individually and in his capacity )
as Probation Supervisor for Westmoreland )
County; CITY OF MONESSEN; CARL )
FRANZAGLIO, individually and in his )
capacity as a Police Officer for the City of )
Monessen; PAUL S. KUNTZ, individually )
and in his capacity as Court Administrator )
for the Westmoreland County Court of )
Common Pleas; JOHN PECK, individually )
and in his capacity as District Attorney of )
Westmoreland County; and CHARLES )
KOSCHALK, )
Defendants )

### ORDER OF COURT

For the reasons set forth in the foregoing Memorandum Opinion, the Motions to Dismiss filed by all Defendants (except Koschalk) are GRANTED and the Plaintiff's Complaint is hereby dismissed with prejudice as to Defendants Westmoreland County, Tami Whalen, Richard Yesko, Anthony C. Guinta, the City of Monessen, Carl Franzaglio, Paul Kuntz and John Peck.

BY THE COURT:

DATED:_____            _____, J.

                                   UNITED STATES DISTRICT JUDGE

Document #: 375156
7280.0113

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN BRIGHT, individually and in his, )
capacity as Administrator of the ESTATE )
OF ANNETTE BRIGHT, deceased, )
                                  )
           Plaintiff )
        v. )    Civil Action No. 03-1072
                                  )
WESTMORELAND COUNTY; TAMI )    JUDGE ARTHUR J. SCHWAB
WHALEN, individually and in her capacity)
as a Probation Officer for W §§estmoreland)
County; RICHARD YESKO, individually )
and in his capacity as a Probation Officer )
for Westmoreland County; ANTHONY C. )
GUINTA, individually and in his capacity )
as Probation Supervisor for Westmoreland )
County; CITY OF MONESSEN; CARL )
FRANZAGLIO, individually and in his )
capacity as a Police Officer for the City of )
Monessen; PAUL S. KUNTZ, individually )
and in his capacity as Court Administrator )
for the Westmoreland County Court of )
Common Pleas; JOHN PECK, individually )
and in his capacity as District Attorney of )
Westmoreland County; and CHARLES )
KOSCHALK, )
          Defendants )

## MEMORANDUM OPINION AND ORDER OF COURT

## I. INTRODUCTION

This case arises from the tragic death of eight-year-old Annette Bright who was murdered by Defendant Charles Koschalk. (Plaintiff's Complaint ¶22). Koschalk pled guilty to the charge of first-degree murder and was sentenced to life in prison without the possibility of parole. (Plaintiff's Complaint ¶24).

Plaintiff, John Bright, Annette Bright's father, brings this civil action against all Defendants under the Pennsylvania Wrongful Death and Survival Acts. Plaintiff

2

also asserts claims arising under 42 U.S.C. § 1983 against all Defendants except Koschalk. Plaintiff has named as Defendants in this action -- in addition to Defendant Koschalk -- Westmoreland County, Tami Whalen and Richard Yesko, individually and in their capacities as Probation Officers for Westmoreland County, Anthony C. Guinta, individually and in his capacity as Probation Supervisor for Westmoreland County, the City of Monessen and Carl Franzaglio, individually and in his capacity as a police officer for the City of Monessen, Paul Kuntz, individually and in his capacity as District Court Administrator for the Westmoreland County Court of Common Pleas and John Peck, individually and in his capacity as District Attorney for Westmoreland County. In Count I of the Complaint, Plaintiff alleges that all Defendants, except for Defendant Koschalk, are liable to him under 42 U.S.C. § 1983 for allegedly depriving Annette Bright "and her family" of their federally protected constitutional rights. In addition, Plaintiff alleges wrongful death and survival action claims against all Defendants, except for Defendant Koschalk, in Counts II and III of the Complaint. Finally, Plaintiff asserts an assault and battery claim against Defendant Koschalk in Count IV of the Complaint.

This matter comes before this Court for resolution of Motions to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of all Defendants except for Defendant Koschalk (hereinafter sometimes referred to as "the Moving Defendants"). As fully explained below, after consideration of the Complaint (document no. 1), the Motion to Dismiss filed by Westmoreland County, Tami Whalen, Richard Yesko, Anthony C. Guinta, and John Peck and brief in support (document nos.

2

3ª

21 and 22), the Motion to Dismiss filed by Paul S. Kuntz (document no. 24), the Motion to Dismiss filed by the City of Monessen and Carl Franzaglio and brief in support (document nos. 25 and 26) and the Brief by John Bright in Opposition to the Motions to Dismiss (document no 27), all claims against the Moving Defendants will be dismissed.

In addition, although no one has appeared of record in this matter for Defendant Koschalk, and Defendant Koschalk has not responded to the Complaint, the only claims against Defendant Koschalk sound in state law in which Plaintiff requests that this Court exercise pendant jurisdiction. However, having dismissed all federal claims, this Court deems it proper to also dismiss the claims against Defendant Koschalk for lack of jurisdiction.

## II. FACTUAL BACKGROUND

Accepting as true, for purposes of the Defendants' Motions to Dismiss, all allegations in Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom, the factual background giving rise to this case as follows. On or about May 31, 2000, Defendant Koschalk (then approximately 34 years of age) pled guilty to a charge of corrupting the morals of a minor as the result of having spent the night with a 12-year-old female, who is alleged to be related to Annette Bright. (Plaintiff's Complaint ¶¶11 and 12). Defendant Koschalk was placed on probation, which, with credit for time served, was to last until April 30, 2002. (Plaintiff's Complaint ¶12). A specific condition of Koschalk's probation was that he was to have no direct or indirect contact with the twelve-year-old minor female victim nor was he to have any

3

4 a

direct or indirect contact with any other minor children without adult supervision. (Plaintiff's Complaint ¶14).

According to Plaintiff's Complaint, after being placed on probation, Defendant Koschalk came under the supervision of the Westmoreland County Adult Probation Department and, in particular, the three individual Defendant Probation Department employees named as Defendants herein. According to Plaintiff, Koschalk, during the course of his probation, continued to make attempts to carry on an unsupervised relationship with the twelve-year-old female. (Plaintiff's Complaint ¶15).

On May 14, 2001, Probation Officer Tami Whalen observed Koschalk having contact with the twelve-year-old victim in violation of the terms of his probation. (Plaintiff's Complaint ¶16). Shortly thereafter, on or around May 16, 2001, Probation Officer Whalen prepared a report documenting the unauthorized contact between Koschalk and the twelve-year-old victim. A formal document alleging a parole violation by Koschalk was signed by Probation Officer Yesko for Probation Officer Whalen on June 15, 2001. On June 18, 2001, Probation Supervisor Guinta signed the same document requesting that a final revocation hearing be scheduled for Koschalk. (Plaintiff's Complaint ¶¶18 and 19). A Petition to Revoke Defendant Koschalk's Probation was filed through the District Attorney's office on June 27, 2001. On or about August 6, 2001, the Westmoreland County Court Administrator's office issued a notice that a hearing on the Petition for Revocation of Koschalk's probation was scheduled for August 28, 2001 before the Honorable William J. Ober of the Court of Common Pleas of Westmoreland County, Pennsylvania. Annette Bright was shot and

4

5a

killed by Defendant Koschalk on July 15, 2001, prior to the scheduled hearing on the Petition for Revocation of Koschalk's probation.

Plaintiff claims that approximately three weeks before Annette Bright's murder, he contacted Officer Carl Franzaglio of the City of Monessen Police Department (who had made the arrest precipitating Koschalk's guilty plea on May 31, 2000) and requested that Officer Franzaglio take immediate action, "for the protection of [Plaintiff John Bright's] family," to incarcerate Koschalk. (Plaintiff's Complaint ¶¶26 and 27). Plaintiff alleges that Officer Franzaglio assured him that immediate action would be taken but, claims that nothing occurred to detain Koschalk prior to the events of July 15, 2001. Plaintiff alleges that one of Koschalk's motives for murdering Annette Bright was to retaliate against Plaintiff and his family for efforts they allegedly made to prevent him from seeing "the twelve year old relative/victim" of the incident for which Koschalk pled guilty in May of 2000. (Plaintiff's Complaint ¶28).

Based on these facts, Plaintiff claims that had the Moving Defendants acted sooner to arrest and incarcerate Koschalk for his probation violations, he would not have had the opportunity to commit the murder of Annette Bright on July 15, 2001. Plaintiff contends that the Probation Department Defendants failed to take timely steps to revoke Koschalk's probation prior to Annette Bright's death. Plaintiff contends that Officer Franzaglio, and his employer, the City of Monessen, are liable to him as a result of Officer Franzaglio's failure to arrest Koschalk for the alleged probation violation prior to Annette Bright's death. Finally, Plaintiff contends that Defendants

5

6a

Paul S. Kuntz, the Westmoreland County Court Administrator, and John Peck, the District Attorney, are liable to him because they are alleged to have unreasonably delayed the scheduling of Defendant Koschalk's probation revocation hearing.

Defendants Westmoreland County, Tami Whalen, Richard Yesko, Anthony C. Guinta and John Peck have moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Paul Kuntz has joined in the Motion to Dismiss filed on behalf of those Defendants. In addition, Defendants Carl Franzaglio and the City of Monessen have moved to dismiss Plaintiff's Complaint. Briefs in Support of the Motions to Dismiss have been filed and Plaintiff has responded with a Brief in Opposition to those Motions. Accordingly, this matter is ripe for disposition.

## III. STANDARD OF REVIEW

In considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the light most favorable to the non-movant. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). "In determining whether a claim should be dismissed under Rule 12(b)(6), the Court should only look to the facts alleged in the Complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not proper unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiffs' allegations." *Id.*

6

7a

The Court is not required to credit or lend credence to "mulled allegations" or "legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 905 (3d Cir. 1997). In ruling on a Rule 12(b)(6) motion, courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations." *Id.* at 907, n.8. "Legal conclusions masquerading as factual conclusions will not suffice to circumvent a motion to dismiss." *Id.* (*quoting Fernandez - Montes v. Allied Pilot Assocs.*, 987 F.2d 278, 284 (5th Cir. 1983)).

## IV. ANALYSIS

**A.     Plaintiff's Complaint fails to state a cause of action for violation of 42 U.S.C. § 1983 under a state created danger theory.**

In Count I of the Complaint, Plaintiff contends that all of the Defendants (except for Defendant Koschalk) are liable for alleged violations of 42 U.S.C. § 1983. It is apparent from Plaintiff's Complaint, and confirmed by Plaintiff's Brief in Opposition to the Motions to Dismiss, that Plaintiff is attempting to establish the liability of the Moving Defendants by contending that their alleged actions and/or inactions created a danger for Annette Bright that she would not otherwise have faced had the Moving Defendants not acted as alleged. Plaintiff claims that the Moving Defendants are liable for the death of Annette Bright under § 1983 based upon the law established by the United States Supreme Court in *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998 (1989) and its progeny. This Court finds that the facts alleged in Plaintiff's Complaint do not establish a viable cause of action under

7 .

42 U.S.C. § 1983 under the Fourteenth Amendment based upon a "state-created danger" theory. The tragic death of the minor, Annette Bright, occurred while she was in the custody of her parents, not a state actor. At no time was she in the custody of any of the Moving Defendants, nor can it be said that any affirmative act by any of the Moving Defendants made her more vulnerable to the crime committed by Koschalk, a private actor, thus creating a danger.

A state actor generally owes no duty to protect an individual against violence from a third person, since the Supreme Court has determined that the Due Process Clause imposes no duty on a state actor to provide members of the general public with adequate protective services. The Due Process Clause has been interpreted to serve as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. *Id.*

In *DeShaney* the Supreme Court held that simply because a state actor releases a person he or she had previously taken into custody, the state actor does not, *ipso facto,* owe a continuing duty to protect the person or others from the person. In *DeShaney,* county officials removed a child from his home, but later returned him to the custody of his abusive father. The father subsequently beat the child to death. The child's mother then sued the county officials claiming that the child's civil rights were violated by their failure to continue to protect the child and by the release of the child from custody. The Supreme Court rejected the mother's claims, stating: .

> That the State once took temporary custody of [the decedent] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been

8 .

9a

had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. *Id.* at 201.

In the instant case, Plaintiff alleges that the Moving Defendants should have taken the affirmative step of arresting and/or incarcerating Koschalk for an alleged probation violation before he murdered Annette Bright. (Plaintiff's Complaint ¶26). Consistent with the Supreme Court's holding in *DeShaney*, however, the fact that the Moving Defendants had been involved with Koschalk's prior arrest and/or his probation do not create any continuing duty on the part of the Moving Defendants to prevent Koschalk from ever committing any other crime. Were this the law, any time a person is released on probation or parole, every member of the judicial system who held some knowledge of the person's conviction and/or the terms of his release from incarceration would assume some potential liability should the releasee commit a future crime. Such a result would only serve to harm the rehabilitation process and have a crippling effect on the ability to hire and retain employees of police forces and the criminal justice system.

This Court finds a decision by Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania in a case involving similar allegations to be persuasive. In *Leidy v. Borough of Glenolden*, 2003 WL 21990003 (E.D. Pa. 2003), Gerald Bennett served 11 ½ months in prison for indecent assault and simple assault before being released on parole in March of 1999. As a condition of his parole, Bennett was required to participate in sex offender treatment classes. A bench warrant was issued when Bennett failed to participate in the program. Bennett subsequently

9

*10a*

appeared at the Glenolden Borough Police Station to surrender himself on the bench warrant. Although a dispatcher advised a Glenolden Borough police officer that the bench warrant existed, a hard copy of the warrant could not be located. As a result, the police advised Bennett that he was being released and suggested that he turn himself in the following day to the Probation Officer. Bennett subsequently left the police station without having been asked for his address which was required for the standard police incident report. Minutes after Bennett left the police station, the Glenolden Borough Police Department was advised that the hard copy of the warrant had been located. Although the Glenolden police officer who had been dealing with Bennett immediately went out to search for Bennett, he was unable to locate him. Six days later, Bennett fatally strangled Roxanne Leidy and raped her thirteen-year-old daughter. Leidy and her daughter lived in a nearby apartment building and Bennett resided with them.

The District Court in *Leidy* granted the Defendants' Motions for Summary Judgment holding, *inter alia*, that the Defendants could not be held liable under the state created danger doctrine because none of the defendants acted to create or increase the danger imposed by Bennett, the parolee, nor were his female victims any more foreseeable as victims than the female public at large. The District Court in *Leidy* based its extensive analysis primarily upon the Supreme Court's opinion in *DeShaney* and the decision by the United States Court of Appeals for the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). The District Court in *Leidy* focused its analysis on the four elements of the state created danger doctrine identified by the Third Circuit in *Kneipp*. Those four factors are:

1.      Whether the harm ultimately caused was foreseeable;

2.      Whether the state actors acted in willful disregard for the safety of the plaintiff;

3.      Whether some relationship existed between the state and the plaintiff; and

4.      Whether the state actors used their authority to create an opportunity for harm that would not otherwise have existed.

Applying the analysis set forth by the Third Circuit in *Kneipp*, and utilized by District Judge Dalzell in *Leidy*, to the facts in the instant case, this Court holds that Plaintiff is unable to satisfy any of the four required elements of a viable state created danger claim.

### 1. Whether the harm ultimately caused was foreseeable?

Plaintiff argues that because Annette Bright was a minor who was related to the prior 12-year-old victim of Koschalk's morals corruption charge, it was foreseeable that Koschalk could harm Plaintiff. This Court finds that this is not a reasonable inference. Plaintiff's factual averments are that Koschalk had pled guilty to corrupting the morals of a minor by keeping the 12-year-old relative with him in a pick-up overnight. Plaintiff argues in his Opposition that it was foreseeable that Koschalk would commit a future crime based upon his refusal to follow the terms of his probation. (Plaintiff's Opposition at p. 7). While it might be argued that the Moving Defendants could have foreseen Koschalk attempting to continue his illegal contact with

11

12a

the 12-year-old, it cannot reasonably be inferred that the Moving Defendants should have anticipated from Koschalk's behavior with the 12 year old that he would murder an 8 year old relative of that child with whom he had no (or at least is not alleged to have had) prior contact.

This Court finds that Plaintiff's allegations are insufficient to infer that the Moving Defendants could have foreseen that Koschalk would act against Annette Bright and in such a violent manner. Koschalk's prior crime did not indicate any danger of violence, particularly murder. By contrast, in *Leidy*, Mr. Bennett had been convicted of both simple and indecent assault yet, as the District Court in *Leidy* found that it was no more foreseeable that Bennett's freedom would result in Leidy's death than it was that Bennett would commit some crime on a member of the public at large. Likewise, this Court finds that Plaintiff's argument that the murder of Annette Bright was a foreseeable and a fairly direct result of the state actors' failure to arrest or prosecute Koschalk sooner is without merit.

### 2. Whether the state actors acted in willful disregard for the safety of Plaintiff?

Plaintiff argues that a fact question exists as to whether the Moving Defendants willfully disregarded a danger to Plaintiff and that he should be allowed the opportunity to develop evidence of willfulness on the part of the Moving Defendants through the discovery process. This Court disagrees. There is nothing but bald speculation to support the argument that the failure to arrest or prosecute Koschalk in a more expeditious manner on the probation violation placed Annette Bright in danger of being

12

13a

murdered. In the cases cited by Plaintiff discussed above, this factor is established by the perpetrator's prior abuse of their eventual victim. In this case, however, Koschalk's prior criminal conduct involved a third person. Thus, it is not reasonable to infer that Koschalk's actions toward the 12-year-old were threatening to Annette Bright and that the Moving Defendants acted in willful disregard of this foreseeable danger. Therefore, the second of the four factors identified in *Kneipp* is not satisfied.

### 3. Whether some relationship existed between the state and Plaintiff?

The District Court in *Leidy* found that the plaintiffs were unable to establish that a relationship existed between the Glenolden police and the victims of Bennett's crimes. The District Court in *Leidy* found that it was reasonably foreseeable that Bennett could have been a threat to women in Delaware County but that this was not a sufficiently discrete class of potential victims to meet the *Kneipp* requirements. Plaintiff's allegations herein also fail to meet the third factor. Plaintiff's allegations show that no relationship existed between Annette Bright and the state, other than the mere mention in the terms of Koschalk's probation that he was not to be alone with minors. The class of minors is not a discrete class and indeed would be broader than the class of women in Delaware County. This language by no means creates a relationship between Annette Bright and the state.

Plaintiff argues that because Annette Bright was a minor and a "relative" of the 12-year old victim of Koschalk's prior crime, there was a "special relationship" between Annette Bright and the state. However, Plaintiff's Complaint does not

13

14a

indicate that any prior relationship existed between the state and Annette Bright. In fact, Plaintiff's Complaint makes no allegation that Annette Bright had any involvement with Koschalk prior to the homicide nor does the Complaint aver or imply any interaction between Annette Bright and any of the Defendants (other than Koschalk on the date of the homicide).

Annette Bright is not alleged to have been a prior victim of a crime committed by Koschalk such as the victims in the cases cited by Plaintiff, i.e. *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990), *McComb v. Wambaugh*, 934 F.2d 474 (3rd Cir. 1991), or *Ford v. Johnson*, 899 F.Supp. 227 (E.D. Pa. 1995). The state's action, that being the order concerning Koschalk's terms of probation, does not establish a discrete class of potential victims of which Annette Bright was a member. Thus, Plaintiff's Complaint fails to meet the requirements of *Kneipp's* third factor.

### 4. Whether the state actors used their authority to create an opportunity for harm that would not otherwise have existed?

Plaintiff argues that the Moving Defendants' failure to arrest and/or incarcerate Koschalk for violating his probation prior to the murder "emboldened" Koschalk by making him believe that no action would be taken against him. This conclusion would require this Court to infer that Plaintiff has read Koschalk's mind. This is not a reasonable inference.

Further, Plaintiff's Complaint details that the Moving Defendants were acting to revoke Koschalk's probation, even if it was not at a pace that Plaintiff suggests was proper. The cases cited by Plaintiff for support of his position clearly show that

14

15a

support for the fourth factor is missing in this case. In *Ford, McComb,* and *Currier v. Doran,* 242 F.3d 905 (10th Cir. 2001), the victim was a child placed back into the custody of an abusive parent. Thus, the state actor's exercise of authority placed the victim in the place where the crime could be committed. Likewise, in *Freeman,* the state actor/chief of police allegedly ordered his officers not to enforce a restraining order against a personal friend. This alleged order allowed the friend to have the ability to murder his estranged wife. In the instant case, the state actors are not alleged to have placed Annette Bright into Koschalk's custody or to have interfered with the enforcement of an order pertaining to Annette Bright. The Moving Defendants' alleged failure to arrest or prosecute Koschalk in a more expeditious manner did not create an opportunity for Koschalk to kill Annette Bright that would not have existed but for their exercise of authority.

Defendants City of Monessen and Franzaglio have presented authority and case law which demonstrate that the Officer did not have the authority to arrest Koschalk for a probation violation. The case law cited by Defendants Franzaglio and the City of Monessen indicates that a municipal police officer in Pennsylvania does not have the authority to make a warrantless arrest of a suspected probation violator unless the probation officer requests the officer to make the arrest. *Commonwealth v. Pincavitch,* 214 A.2d 280 (Pa. Super. 1965), and *Commonwealth v. Lyons,* 555 A.2d 920 (Pa. Super. 1989). Plaintiff's Complaint neither avers nor implies that Officer Franzaglio was requested by a probation officer to arrest Koschalk. As a result, Plaintiff is unable to show that Defendants Franzaglio or the City of Monessen, could have acted to create

15

*16a*

a danger that did not already exist. Plaintiff's argument that the Officer could have contacted the probation officer and asked for permission based upon the *Lyons* case turns the Pennsylvania Superior Court's analysis on its head. The Superior Court in *Lyons* found that the officer derived the power to arrest a probation violator based upon a request for assistance by another law enforcement officer. *Lyons* does not stand for the proposition that a municipal officer can create authority by reporting a violation and asking permission to make an arrest. Plaintiff has not informed this Court of any legal precedent or support which indicates that Officer Franzaglio could have lawfully made the arrest. Plaintiff has not informed this Court of any legal precedent or support which indicates that Officer Franzaglio could have lawfully made the arrest. Accordingly, Officer Franzaglio had no authority to act in the manner Plaintiff suggests he could have and/or should have acted.

The allegations in Plaintiff's Complaint, even when construed in a light most favorable to Plaintiff as the non-moving party, fail to show that the Moving Defendants' actions and/or omissions created the danger that Defendant Koschalk would commit a crime against Annette Bright that did not otherwise exist. Nothing that the Moving Defendants did or did not do placed Annette Bright in **more** danger than she would have faced had the Defendants never been involved with Koschalk's probation violations. Annette Bright had no constitutional right to be protected from the criminal acts of third persons and, therefore, was not deprived of a constitutional right by any of the Moving Defendants. *See DeShaney*, 489 U.S. 189, 109 S.Ct. 998

16

17a

(1989). For these reasons, Plaintiff's § 1983 claims against the Moving Defendants must be dismissed.

### B. Plaintiff's Wrongful Death and Survival Actions Fail as a Matter of Law.

Plaintiff also states pendent causes of action against the Moving Defendants for Wrongful Death and Survival. (Plaintiff's Complaint Counts II and III). Plaintiff's claims against Westmoreland County and the City of Monessen are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq. ("P.S.T.C.A.") The P.S.T.C.A only waives municipal immunity as to negligence claims based upon eight narrow exceptions found in 42 Pa.C.S. §8542(b)(1)-(8). Plaintiff's claims do not fall in any of the exceptions and are, thus, barred.

Plaintiff's state law claims against the Individual Moving Defendants are also barred by the P.S.T.C.A. The plaintiffs in the *Leidy* case made state law claims in addition to their *DeShaney* claim. The District Court in *Leidy* granted summary judgment as to the state law claims brought against the Borough's employees based upon the P.S.T.C.A. The plaintiffs, in *Leidy*, alleged that the individual officers were liable for negligent infliction of emotional distress. The District Court found that the plaintiff's allegations could not support a finding that the individual defendants "intended to violate the law or bring about the harm that resulted to the plaintiffs". *Leidy*, 2003 WL 21990003 at 17. As a result, the District Court found that the provisions of the P.S.T.C.A., 42 Pa.C.S §§ 8541-42, 8545, and 8550, barred the plaintiffs' claims. In the instant case the result is identical.

17

18a

The Pennsylvania Wrongful Death and Survival Act, 42 Pa.C.S. §§ 8301 and 8302 were enacted to allow the survival of viable causes of action for bodily injury to a deceased, beyond the life of the victim. (*See generally Baumgart v. Keene Building Products Corp.*, 633 A.2d 1189 (Pa. Super. 1993)). The Wrongful Death and Survival Act did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted. As a result, Plaintiff in the instant case must state all the elements of a valid tort theory and such theory is subject to the defenses to that theory. Thus, if the underlying tort theory is barred by immunity, then the wrongful death or survival claim will fail. In this case, Plaintiff cannot show for the reasons stated herein.

Any negligence claim against the Moving Defendants must meet an exception to the immunity provided in the P.S.T.C.A. This Court finds no such exception applicable as to Westmoreland County and/or the City of Monessen. Similarly, as the District Court in *Leidy* found the individual Moving Defendants have not been alleged to have knowingly violated a law or intended to cause harm to Annette Bright. As a result, Plaintiff's claims are barred by the provisions of the P.S.T.C.A. Accordingly, this Court finds that Plaintiff's Wrongful Death and Survival Claims against the Moving Defendants should be dismissed for failing to state a claim.

18

19a

## C.  Plaintiff's Remaining State Law Claims Against Defendant Koschalk Must be Dismissed for Lack of Jurisdiction.

The only claims yet to be disposed of in the case are a survivorship action and assault and battery claims against Defendant Koschalk (part of Count III and Count IV).[1] Plaintiff brings both of these state claims, requesting that this Court exercise pendent jurisdiction over the matters. However, absent extraordinary circumstances, where the federal causes of action are dismissed the district court should "ordinarily refrain from exercising pendent jurisdiction [over the state law claims]." *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 215 (D.N.J. 1993), *aff'd* 43 F.3d 1462 (3d Cir. 1994) (citations omitted). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the District Court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa.C.S. § 5103(b).)

There are no "extraordinary circumstances" which warrant the exercise of jurisdiction over the state claims, and this Court declines to exercise supplemental

---

[1] This Court notes that while Defendant Koschalk has yet to be served with the Complaint, and there is still time remaining in which Plaintiff may attempt to execute service, this Court, nevertheless deems it proper to *sua sponte* dismiss the claims for the reasons stated within.

19

20a

jurisdiction over the survivorship and assault and battery claims against Defendant

Koschalk. Plaintiffs may attempt to pursue these claims in state court pursuant to 42

Pa.C.S. § 5103(b). *See Williams v. F.L. Smithe Mach. Co.*, 395 Pa. Super. 511, 577 A.2d

907 (1990).

21a

## ORDER

For the reasons set forth in the foregoing Memorandum Opinion, the Motion to Dismiss filed by Westmoreland County, Tami Whalen, Richard Yesko, Anthony C. Guinta, and John Peck (document no. 21), the Motion to Dismiss filed by Paul S. Kuntz (document no. 24), and the Motion to Dismiss filed by the City of Monessen and Carl Franzaglio (document no. 25) are HEREBY GRANTED. In addition, in light of the dismissal of all federal claims, all claims against Defendant Koschalk are HEREBY DISMISSED for lack of jurisdiction. The Clerk shall thereby mark this case as CLOSED.

SO ORDERED this 30th day of September, 2003.

_____
Arthur J. Schwab
United States District Judge

cc:    All counsel of record as listed below

Peter M. Suwak, Esquire
P.O. Box 1
Washington, PA 15301

Mary E. Butler, Esquire
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102