John BRIGHT, Plaintiff,

v.

WESTMORELAND COUNTY,
et al., Defendants.

No. 03CV1072.

United States District Court,
W.D. Pennsylvania.

Nov. 8, 2004.

Peter M. Suwak, Washington, PA, for Plaintiff.

Thomas P. Pellis, Meyer, Darragh, Buckler, Bebenek & Eck, Greensburg, PA, Thomas P. McGinnis, Mark R. Hamilton, Zimmer Kunz, Pittsburgh, PA, Mary E. Butler, Esq., Administrative Office of Pennsylvania Courts, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION AND SCHEDULING ORDER

SCHWAB, District Judge.

### I. INTRODUCTION

On August 24, 2004, the United States Court of Appeals for the Third Circuit remanded this case to this Court "to re-evaluate the appellees' [defendants'] motion to dismiss in a procedure consistent with this opinion." *Bright v. Westmoreland County,* 380 F.3d 729, 732 (3d. Cir. 2004).

In an effort to provide the parties some comfort concerning the future progression of this case before this Court and to address the concerns raised by the Court of Appeals in its opinion, I will explain my understanding of the past history of this case, set forth revisions to certain general Practices and Procedures in this Court, and establish a case-specific schedule.

## II. DISCUSSION

### A. Procedural History

Plaintiff filed his Complaint on July 15, 2003, approximately six and a half months after I joined the bench. Consistent with the practice of this Court, the Complaint was reviewed within a few days of its filing. It was noted the case had one federal cause of action and three state causes of action. Over the next thirty (30) days, counsel for the defendants entered their respective appearances. Doc. Nos. 2, 3, and 4.

By Order of August 15, 2003, my deputy clerk scheduled an initial case management conference for September 4, 2003, and sent out my Motions Practices and my Chamber Practices and Procedures ("Practices"), documents totaling approximately twenty-five (25) pages. Doc. Nos. 5 and 6. Each district judge has his or her own Practices, and they somewhat differ.

While in large part my Practices incorporate those from my esteemed colleagues in this district, I have adopted some practices from federal courts around the country, which I learned during my thirty (30) years of litigation practice while trying cases in federal courts in approximately twenty-five (25) different states. The Practices of this Court have been modified over the last twenty-two (22) months based upon comments, suggestions, criticisms and recommendations, including those received from the attorneys who participated in an informal roundtable discussion in May 2004. Every trial attorney who had participated in the seventeen (17) trials that were conducted before this Court since the time that I went on the bench through April 2004 was invited to attend the May 2004 discussion.

As to this case in particular, neither counsel, nor the parties, at any time, objected to or asked for modification of my then-current Practices.

Sometime in mid to late August 2003, I was reviewing the weekly newspaper clippings sent to federal judges within the Third Circuit. During the process of that review, I read a lengthy newspaper article (dated August 14, 2003) about a case decided in the United States District Court for the Eastern District of Pennsylvania, *Leidy v. Borough of Glenolden.* On many points, I thought that issues in that case sounded similar to the legal issues in this case. The article indicated that the opinion was 49 pages in length, and we obtained a copy thereof. I then read the decision and formed an initial view that while the case was not "binding" upon the matter at hand, the analysis of the case was well-reasoned and persuasive. The *Leidy* case is currently before the Court of Appeals, and the argument is scheduled for November 19, 2004.

The initial case management conference in this case was re-scheduled to September 17, 2003, by Order dated August 18, 2003. Doc. No. 8.

Prior to the said conference, on September 12, 2003, defendants filed a Motion to Dismiss the federal cause of action with Brief in Support thereof. Doc. Nos. 21 and 22. Consistent with my practice, I read the Motion and Brief within days of the filing. By Order dated September 15, 2003, my deputy clerk directed counsel for plaintiff to file a response to the Motion to Dismiss on or before September 24, 2003. Doc. No. 23.

Consistent with my practice, I prepared for the September 17, 2003 initial case management conference by reviewing the file, including the Complaint, Motion to Dismiss and related Brief, and the *Leidy* decision. At the conference, many topics were discussed including the case in general, possible settlement, insurance coverage, and ADR alternatives; all of which were consistent with my Practices. At that

time, I advised the parties that I thought the *Leidy* case appeared to be on point. Counsel did not appear to be aware of the case, and it had not been cited in the Motion to Dismiss or related Brief. However, I did not state at the conference that I would definitely grant the Motion. I did state that I was inclined to grant the Motion to Dismiss in light of current law and the *Leidy* decision, but, in fairness to plaintiff, I focused counsel for plaintiff on what I believed were important factors for him to address in his response.

During my time in private practice trying cases around the country, many times judges at conferences would indicate to counsel their preliminary observations regarding certain motions or issues. I always appreciated hearing this information (even if the judge's "leaning" was not in my client's favor) because it gave me the ability to focus my arguments in the responsive brief and/or oral argument on the issues that concerned the judge.

The training and literature regarding judicial practices provided to this Court does not indicate any inappropriateness of advising counsel of initial impressions formed as a result of arguments, briefs or case citations. In addition, this Court believed that competent counsel would appreciate an indication of the persuasiveness of their initial arguments.

At the time of the initial case management conference in this case, this Court conducted informal conferences in a conference room or the jury room with a law clerk or deputy clerk present but without a court reporter unless requested. This practice is consistent with the practice generally followed in this district so as to not burden the court reporters. Upon joining the bench, I understood that the presence of a member of the staff at the conference would provide sufficient protection from any misunderstandings, or mistakes of or inaccurate memory, or even

falsehoods. I never imagined that I would be charged with an "unrebutted assertion" where there was no court record and no opportunity "to rebut." To avoid re-occurrence of this "no record" situation, this Court now conducts all conferences (except settlement conferences) in open court with a court reporter.

Counsel for defendants was asked at the initial conference to prepare a draft Memorandum Opinion based upon the Court's expressed understanding of this case and the current law, including the *Leidy* decision. At no time either during or after the conference was an objection raised to this procedure.

If the parties were uncomfortable with this procedure, there were several actions which could and should have been taken at that time. First, any counsel could have requested a court reporter, to place an objection on the record. Second, any counsel could have filed a written objection to the procedure at any time before the issuance of the Memorandum Opinion. Third, even after the issuance of the Memorandum Opinion, any counsel still had the opportunity to file a written objection, prior to any appeal. Fourth, any counsel could have filed a motion to reconsider. (There were thirty days between the date of the Memorandum Opinion and the filing of the Notice of Appeal.) Doc. Nos. 28 and 29. Fifth and finally, any counsel could have requested a status conference with a court reporter at any time prior to the appeal.

Obviously, if any counsel had made a verbal objection, filed a written objection or motion to reconsider, or even requested a status conference, it would have alerted this Court that there was a concern with this procedure and provided an opportunity to resolve it either by withdrawing the Memorandum Opinion or by writing an explanation so that the appellate court

would have the benefit of the district court's perspective.

Here, plaintiff did not raise or file an objection before this Court, nor did plaintiff raise an objection to the procedure as an "appealed" issue as required by Rule 28 of the Federal Rules of Appellate Procedure. Instead, plaintiff's concerns were set forth for the first time (and only time) in footnote 4 on page 14 of the Appellant Brief. Accordingly, defendants did not have an opportunity to respond in their appellate brief, nor was the case remanded to this Court to provide an explanation of the procedure used in this case.

At the time of the initial case management conference in September, 2003, I viewed my request for a proposed Memorandum Order, as the starting point for my written Memorandum Opinion, to be consistent with my requests in other cases where I asked counsel to provide proposed Findings of Fact and Conclusions of Law, proposed Orders of Court (even very lengthy ones), proposed Jury Instructions or Voir Dire questions, and numerous other documents. My Practices, consistent with our Local Rules, provides that such proposed Findings of Fact or Conclusions of Law and other documents are to be provided to the Court "on computer disk/cd formatted in WordPerfect format." This Court has received numerous documents from counsel by e-mail. It is true that the *starting* point of numerous documents, eventually signed by this Court, and by other district court judges in this and other districts, may initially be counsel's work product. Why are district courts throughout this country receiving attorney work product on "computer disk/cd," if they are not to be used as a starting point? It never occurred to me at that time that anyone would view as improper the practice of an attorney's work product serving as a starting point for a Memorandum Opinion from this Court.

Further, it also did not occur to me that there was a material difference between (a) "proposed findings of fact and conclusions of law" submitted by counsel as a "starting point" which practice has been upheld by the Court of Appeals and other appellate courts and (b) a "proposed memorandum opinion" submitted by counsel as a "starting point" which has been deemed improper. Until receiving the Court of Appeals opinion in this case, this Court viewed both the same, except one had numbered paragraphs and one did not.

Thereafter, I received a draft Memorandum Opinion from counsel for defendants. In the review of the draft, I found that the draft included my initial analysis of the *Leidy* decision and the other applicable law, as I commented to the parties at the initial case management conference, and the application thereof to this case. Since the draft essentially followed my analysis as discussed at the initial case management conference, I viewed the draft as I would a draft from one of my law clerks.

Furthermore, I presumed the draft was served upon opposing counsel since counsel has an obligation to always serve opposing counsel. It was not this Court's understanding that it was the responsibility of the Court or the Clerk's Office to serve documents of a party upon opposing counsel. Fed.R.Civ.P. 5. Likewise, it is counsel's responsibility to file at the Clerk's Office such documents counsel wishes to have included in the record. Again, this Court did not understand that said responsibility rested upon the Court or the Clerk's Office. *Id.*

In its Opinion, the Court of Appeals implied that something was improper because the proposed Memorandum Opinion did not have a Certificate of Service. While the Certificate of Service may still be used in some courts, our Local Rules do

not require a Certificate of Service. Local Rule 5.2 states:

> Except as otherwise provided by these rules, the filing or submission to the court by a party of any pleading or paper required to be serviced on the other parties pursuant to Fed.R.Civ.P. 5, shall constitute a representation that a copy thereof has been served upon each of the parties upon whom service is required. No further proof of service is required unless an adverse party raises a question of notice.

Further, the cover letter, dated September 29, 2003, enclosing the proposed Memorandum Opinion to the Court, expressly made the representation that the proposed Memorandum Opinion had been filed *and* served on all counsel at the same time as service upon this Court (i.e., "cc: (all w/ enclosure)"). (All counsel stated at the recent October 21, 2004 status conference that they in fact had received a copy of the proposed Memorandum Opinion.)

Three days earlier, on September 26, 2003, plaintiff filed his Brief in Opposition. Doc. No. 27. It was immediately read and the arguments raised in the Brief were considered. However, plaintiff's arguments did not persuade this Court to change its initial perspective. The final decision was not made until *after* I personally read plaintiff's Brief in Opposition.

I then *personally* worked on revising the proposed Memorandum Opinion. The changes were not extensive because the proposed Memorandum Opinion was based upon my analysis, as demonstrated by a comparison of the proposed Memorandum Opinion and the earlier defendants' Brief in Support of the Motion to Dismiss. The *Leidy* case "drove" the proposed Memorandum Opinion and, as stated above, was not mentioned in said Brief.

In addition to "two substantive changes," I made over sixty (60) "markings," including correction of citation form, verb changes, tense changes, spelling corrections, etc. My training as a law clerk for a well-respected Judge of the United States Court of Appeals for the Third Circuit and as a member of the Virginia Law Review, as well as over thirty (30) years of trial practice, taught me that such matters were important.

My Memorandum Opinion also dealt with a matter not discussed in the Motion to Dismiss—the disposition of the state court claims. Obviously, once I decided to dismiss the federal claim, I had to decide the disposition of the state court claims, whether or not this matter was raised in the Motion to Dismiss. This is a common scenario, and district courts routinely dismiss state claims *sua sponte* after dismissing the federal cause of action. The proposed Memorandum Opinion anticipated this matter. I independently decided to dismiss the state court claims which was within my discretion. (Again, plaintiff did not file a Motion to Reconsider that decision, nor was any request filed by plaintiff seeking to have the state court claims "transferred" to state court.) My law clerk then verified the case citations and holdings in my Memorandum Opinion, and it was filed and served. Doc. No. 33.

Hopefully, the above explanation sufficiently demonstrates the reasons I believe I exercised "independent judgment" in my Memorandum Opinion of September 30, 2004.

### B. Change to My Practices and Procedures

In order to implement the directives contained in the Court of Appeal's opinion and to ensure a record by a court reporter in future cases, the parties should be aware that this Court has changed its Practices and Procedures, effective September 10, 2004, as follows:

## I. GENERAL MATTERS

### A. Communications with the Court

Communication with the Court shall be in the form of motions, accompanied by a proposed order specifying the relief requested.

\* \* \*

### C. Filing and Service

Counsel (not the Court) is responsible for filing of all pleadings, documents or any other material provided to the Court and/or the Office of the Clerk, and service upon opposing counsel or pro se parties. The Court is *not* responsible for filing and/or service of the pleadings, documents or any other material of the parties.

### D. Objections

If counsel at any time has an objection to any procedure, ruling or other action of the Court, it is counsel's responsibility to make an immediate formal objection on the record. If there is no court reporter present and counsel has an objection(s), it is counsel's responsibility to request a court reporter and thereafter place the objection(s) on the record.

■■■ First, the former practice of receiving "informal" letters, requests, position papers, and other documents, instead of formal motions or formal briefs, must cease so that all papers submitted may be filed and placed on the docket, in spite of the impact this change will have regarding cost implications for the bar and litigants. Second, while the non-record initial case management conferences were previously more informal and efficient, it is apparent that a record must now be made at all non-settlement conferences, and they will be conducted in open court with a court reporter. Third, while this Court always understood that objections needed to be made at the district court level, except in unusual situations, and not "saved" for appeal, this requirement is now a formal part of this Court's Practices.

While this district's informal practices have been a positive statement of the high quality and professionalism of the bench and bar, and while position papers, letters and the like save the clients' money, informality fails to produce a "docket" entry and a written transcript for the record.

### C. Public Policy Matters

As a district court judge, I believe that under the Civil Justice Reform Act and for other jurisprudential reasons, federal courts should strive to implement practices and procedures that are consistent with both justice and efficiency.

In its Memorandum to all United States Judges on October 1, 2004, the Executive Committee of the Judicial Conference of the United States stated: "The Executive Committee believes that the judiciary must . . . identify and implement more efficient operating procedures to improve productivity, [and] find ways to absorb more work without additional staff. . . ."

Beyond budget issues, caseload issues nationally also require both justice and efficiency, as demonstrated by the following federal courts national statistics: as of September 30, 2003, "cases pending more than three years, total"—17,657 cases; "motion pending [over 6 months], total"—10,936 motions; "bench trials pending, total"—263 trials; "bankruptcy appeals pending, total"—280 appeals; and, "social security appeals cases pending, total"—865 appeals. *See* Report of the Administrative Office of the United States Courts, Civil Justice Reform Act, September 30, 2003.

The federal judiciary should encourage district court judges to innovate—subject to appellate review and correction if necessary. For instance, use of "position papers" instead of full briefing (in the absence of objection) is employed in many district courts throughout the country. Appellate courts always have the right to find a particular practice or procedure to

be unwise or improper, and reasonable people may disagree on the wisdom or propriety of a particular practice or procedure. But judicial innovation will stop if appellate courts take the further step of questioning the judge's integrity in his or her implementation of a particular practice or procedure. Such an approach does not create a culture of innovation (consistent with justice) which these times seem to require.

I believe a balanced and common sense approach is set forth in the Mission Statement of the United States District Court for the Western District of Pennsylvania as follows:

> The mission of the United States District Court for the Western District of Pennsylvania is to preserve and enhance the rule of law while providing an impartial and accessible forum for the just, timely and economical resolution of legal proceedings within the court's jurisdiction, so as to protect individual rights and liberties, promote public trust and confidence in the judicial system, and to maintain judicial independence.

### III. CONCLUSION

I trust that the above explanation coupled with changes to this Court's Practices and Procedures will fully implement the directives of the Court of Appeals in its opinion. I also trust that the explanation of the procedural history of this case reassures the parties that their arguments were fairly and impartially considered and that this Court will continue to make decisions that are impartial, unbiased, and independent.

### SCHEDULING ORDER

With the consent of all counsel at the status conference of October 21, 2004, IT IS HEREBY ORDERED that Defendants' Renewed Motion to Dismiss with supporting Briefs shall be filed on or before December 10, 1004; Plaintiff's Brief in Opposition shall be filed on or before January 14, 2005; and Defendants' Reply Brief shall be filed on or before January 24, 2005.

Counsel should be familiar with this Court's Practices and Procedures (see Court Practices and Procedures at *www.pawd.uscourts.gov,* link "court practice".)