

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-10-2007

# Francis v. Mineta

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Francis v. Mineta" (2007). *2007 Decisions.* Paper 312.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/312

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No:  06-1293

ALBION FRANCIS,

Appellant

v.

NORMAN Y. MINETA;
TRANSPORTATION SECURITY ADMINISTRATION;
U.S. DEPARTMENT OF TRANSPORTATION;
UNITED STATES OF AMERICA

Appeal from the District Court of the Virgin Islands
(Civil No. 03-cv-00039)
District Judge: Hon. Raymond L. Finch

Argued: December 6, 2006

Before: McKEE, BARRY and STAPLETON, *Circuit Judges*,

(Filed; October 10, 2007)

VINCENT A. COLIANNI, ESQ.  (Argued)
Colianni & Colianni
1138 King Street
Christiansted, VI 00820
*Attorneys for Appellant*

PETER D. KEISLER, ESQ.
Assistant Attorney General
ANTHONY J. JENKINS, ESQ.
United States Attorney
MARLEIGH D. DOVER, ESQ.
MATTHEW M. COLLETTE, ESQ.  (Argued)
Attorneys, Appellate Staff
Civil Division
Department of Justice
Washington, D.C. 20530
*Attorneys for Appellee*s

OPINION

McKEE, *Circuit Judge*.

Albion Francis, a former federal employee, appeals the District Court's dismissal, pursuant to Fed.R.Civ.P. 12(b)(1), of the employment discrimination claim he attempted to bring under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4.  The District Court held that it lacked subject

2

matter jurisdiction over Francis's claim of religious discrimination because any such claim must be brought under Title VII of the Civil Rights Act of 1964. The District Court also held that the action must be dismissed for lack of subject matter jurisdiction because Francis failed to exhaust his administrative remedies under Title VII. *See* 42 U.S.C. § 20003-16(c).

We disagree with the District Court's finding that it did not have subject matter jurisdiction. It had federal question subject matter jurisdiction under 28 U.S.C. § 1331. However, because we "may affirm a result reached by a District Court on different reasons, as long as the record supports the judgment," *Brumfield v. Sanders*, 232 F.3d 376, 379 n.2 (3d Cir. 2000) (citation omitted), we will affirm as a dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which

3

relief can be granted.[1]

As we explained in *Robinson v. Dalton*, 107 F.3d 1018, 1021-22 (3d Cir. 1997):

> Although the district court in this case described its preliminary evaluation as "jurisdictional," this court has previously determined that questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions "are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction." Moreover, in Title VII cases courts are permitted in certain limited circumstances to equitably toll filing requirements, even if there has been a complete failure to file, which necessarily precludes characterizing such requirements as "jurisdictional."

---

[1]"In considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the light most favorable to the non-movant." *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3d Cir. 2004) (citation omitted). "Dismissal is not proper unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id*. (citation and internal quotations omitted).

4

>It follows that the . . . motion to dismiss should have been treated under Rule 12(b)(6).

(citations omitted).

## I. FACTUAL BACKGROUND

In 2001, Congress enacted the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001), creating a federal workforce to screen passengers and cargo at the nation's commercial airports. *Am. Fed'n of Gov't Employees v. Loy*, 367 F.3d 932, 934 (D.C. Cir. 2004). Pursuant to the authority contained in that Act, the Transportation Security Administration ("TSA") assumed responsibility for security screening in the nation's commercial airports.[2]

---

[2] Pursuant to the Department of Homeland Security Reorganization Plan (Nov. 25, 2002), as required by Section 1502 of the Department of Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), TSA was

(continued...)

In October 2002, TSA hired Albion Francis as a security screener at the Henry E. Rohlsen Airport in St. Croix, U.S. Virgin Islands. Francis is an African-American male who wears his hair in dreadlocks, which he declares to be "an important expression of [his] sincerely held religious beliefs."

All new TSA employees are required to undergo forty hours of classroom training and sixty hours of on-the-job training. On October 20, 2002, TSA's new transportation screeners in the Virgin Islands, including Francis, began their training at the Rohlsen Airport. Prior to administering the oath of employment to the screeners, Deputy Federal Security Director Lawrence Londer told the new screeners that they were part of a uniformed service and were therefore subject to the

[2](...continued)
transferred from the Department of Transportation to the Department of Homeland Security, effective March 1, 2003.

6

mandatory grooming policy that TSA had established for its uniformed employees. Londer stated that if this policy presented a problem to anyone, he/she should not take the oath of employment. He then administered the oath of employment to those present, including Francis.

At an orientation session approximately one week later, TSA screening manager Steven Betz noticed that three screeners, including Francis, had hairstyles that did not conform to the agency's grooming policy, and he informed them that they had to conform to that policy.

Francis alleges that he informed Betz that he would not cut his dreadlocks, and told him that the refusal to cut his dreadlocks was based on his religious beliefs. Francis further alleges that Betz then ordered him to sign a separation agreement, terminating his employment. Thereafter, Francis filed the instant suit in the District Court.

7

## II. DISTRICT COURT PROCEEDINGS

Francis asserts a cause of action for religious discrimination under the Religious Freedom Restoration Act ("RFRA"),[3] 42 U.S.C. §§ 2000bb-2000bb-4. He named as defendants: Norman Y. Mineta, the then - Secretary of Transportation; the Department of Transportation; the TSA; and the United States. The one-count complaint alleges that TSA fired him because he refused to comply with TSA's grooming policy. It also alleges that the grooming policy, as applied to him, violates RFRA because it substantially burdens his sincerely held religious beliefs without furthering any

---

[3]The RFRA applies only to the federal government. In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held that the Act was unconstitutional, as applied to the states, under section 5 of the Fourteenth Amendment.

compelling governmental interest.[4]

The Government moved to dismiss based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Government argued that Title VII of the Civil Rights Act of 1964 is the exclusive remedy for asserting claims of federal employment discrimination. The Government also argued that the suit should be dismissed because Francis had not exhausted his administrative remedies.

In granting the Government's motion to dismiss, the District Court held that the comprehensive and exclusive remedial scheme of Title VII precludes Francis's attempt to obtain redress under RFRA. The District Court also agreed that Francis was required to administratively exhaust his claim as

---

[4] Francis sought compensatory damages, reinstatement and injunctive relief against the enforcement of the grooming policy, as well as attorneys' fees and costs.

9

provided in Title VII. This appeal followed.

### III. DISCUSSION

As noted above, Francis claims that his dreadlocks have religious significance and that TSA's grooming policy substantially burdens his free exercise of religion because it forces him to remove the dreadlocks despite their religious significance. Francis argues that the policy can not be applied to him under RFRA unless the Government can demonstrate that it furthers a compelling governmental interest. He relies upon the following provisions of RFRA:

§ 2000bb-1. Free exercise of religion protected

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

10

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(a)-(b).

Francis also claims that the plain text of RFRA "clearly gives [him] and other federal employees a right to sue under the statute." He points to two subsections to support his claim: (1) § 2000bb(b)(2) (stating that one of the purposes of RFRA is "to provide a claim or defense to persons whose religious exercise is substantially burdened by government."); and (2) § 2000bb-1(c) ("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense

11

under this section shall be governed by the general rules of standing under article III of the Constitution.").

We can best respond to Francis's reliance on RFRA by reiterating the background of that statute. In *Adams v. Comm'r of Internal Revenue*, we explained: "[i]n enacting RFRA, Congress specifically announced its intent to 'restore' the 'compelling interest' test set forth in *Sherbert v.Verner* and *Wisconsin v. Yoder* . . . and 'to guarantee its application in all cases where free exercise of religion is substantially burdened[.]'" 170 F.3d 173, 176 (3d Cir. 1999) (quoting 42 U.S.C. § 2000bb(b)(1)).

Under the compelling interest test, the Supreme Court had traditionally held that laws that substantially burden the free exercise of religion must be supported by a compelling interest to survive scrutiny under the First Amendment. However, in 1990, the Supreme Court decided *Employment Div., Dep't of*

12

*Human Res. v. Smith*, 494 U.S. 872 (1990). There, the Supreme Court held that the Free Exercise Clause did not require Oregon to exempt the sacramental ingestion of peyote by members of the Native American Church from Oregon's criminal drug laws. *Id.* at 877-82. The Court concluded that such generally applicable laws may be applied to religious exercise even in the absence of a compelling governmental interest. *Id.* at 884-89. Congress responded by enacting RFRA.

Enacted in 1993, RFRA applies to "all Federal law" and the implementation of that law, "whether statutory or otherwise," adopted both before and after the passage of RFRA. 42 U.S.C. § 2000bb-3(a). Despite the apparent limitless scope of RFRA, Congress was careful to circumscribe its reach. Accordingly, in a section captioned "Other Areas of Law are Unaffected," the Senate Report on RFRA states: "[a]lthough the purpose of this act is only to overturn the Supreme Court's

13

decision in *Smith*, concerns have been raised that the act could have unintended consequences and unsettle other areas of law." S. Rep. No. 103-111, at 12 (1993), as reprinted in 1993 U.S.C.C.A.N. 1879, 1902. The Report then discusses a number of areas that are not affected by RFRA, including Title VII. It explains: "[n]othing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964." *Id.* at 13, as reprinted in 1993 U.S.C.C.A.N. at 1903. The House Report on RFRA contains nearly identical language. *See* H.R. Rep. No. 103-88, at 9 (1993).

It is not surprising that nothing in RFRA alters the exclusive nature of Title VII with regard to employees' claims of religion-based employment discrimination. Nothing in pre-*Smith* case law permitted an employee alleging employment discrimination based on religion to bypass Title VII's exclusive and comprehensive scheme. Accordingly, since RFRA was only

14

enacted to overturn *Smith* and restore pre-*Smith* case law, the Senate Report merely clarifies that Congress did not intend RFRA to subsume other statutory schemes.

Francis claims the District Court erred in considering this legislative history and disregarding the plain language of RFRA. However, as we shall discuss, the plain text of RFRA does not necessarily advance our inquiry because, according to Francis, RFRA subsumes the prohibition on employment discrimination that is the hallmark of Title VII. Thus, to the extent that there is any ambiguity about RFRA's impact on Title VII, legislative history becomes a useful and appropriate tool for our inquiry into congressional intent. *See In re Mehta*, 310 F.3d 308 (3d Cir. 2002). Even a cursory examination of the text of Title VII reveals that RFRA's legislative history can guide that inquiry.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discharge

15

any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]"  42 U.S.C. § 2000e-2(a)(1).  Section 2000e(j) of Title 42 defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."   In enacting this provision, Congress clearly intended to make it unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

In 1972, Congress extended Title VII's protection to

16

federal employees. 42 U.S.C. § 2000e-16 provides that "[a]ll personnel actions affecting employees or applicants for employment" in military departments, executive agencies, and several specified governmental entities "shall be made free from any discrimination based on race, color, religion, sex or national origin." Thereafter, the Supreme Court held that Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. GSA*, 425 U.S. 820, 829 (1976).[5] Title VII thus sweeps within its reach all claims of employment discrimination whether they are based on religion or another enumerated form of discrimination that may impact a constitutionally protected right. As we explained in *Owens v. United States*, "[i]nterpretation of

---

[5]Because Title VII's protections were extended to federal employees, federal employees complaining of employment discrimination became subject to Title VII's administrative exhaustion requirements. *Brown,* 425 U.S. at, 833.

17

Title VII has shown that Title VII . . . 'precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.'" 822 F.2d 408, 410 (3d Cir. 1987) (quoting *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983)).

Francis's complaint alleges, *inter alia*, that in firing him for not cutting his dreadlocks, the TSA violated his right to freely exercise his religion. He claims that he was terminated because his religious practice (wearing dreadlocks) was inconsistent with TSA's grooming policy. He is suing because that policy failed to accommodate his religiously-based conduct. But that is an attempt to use RFRA to force the TSA to accommodate wearing dreadlocks because they have religious significance. The legislative history that we have discussed demonstrates that Congress did not intend RFRA to create a vehicle for allowing religious accommodation claims in the

18

context of federal employment to do an end run around the legislative scheme of Title VII.[6] The Supreme Court framed the issue before it in *Brown*, as follows: "[i]s . . . the Civil Rights Act of 1964, . . . [as amended,] the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination?" 425 U.S. at 824-25. It is equally clear that Title VII provides the exclusive remedy for job-related claims of federal religious discrimination, despite Francis's attempt to rely upon the provisions of RFRA.

### III.

One matter remains. Because the District Court found that Title VII precludes Francis's RFRA claim, it also held that Francis was required to exhaust administrative remedies under Title VII. *See* 42 U.S.C. § 20003-16(c); *Brown*, 425 U.S. at

---

[6]The Government concedes that the conduct alleged by Francis clearly falls within the purview of Title VII.

19

832-33. Since Francis did not exhaust his remedies, the District Court dismissed his claim. Francis claims that was error and insists that his "RFRA claim" is not subject to the exhaustion requirements of Title VII. However, as we have explained, his claim is not a RFRA claim; rather, it is a Title VII claim and Title VII requires exhaustion.

**IV.**

Accordingly, the order of the District Court dismissing Francis's complaint will be affirmed.[7]

---

[7]Judge Stapleton concurs, but writes separately to discuss this claim of employment discrimination based on religion. We do not disagree with his discussion.

STAPLETON, Circuit Judge, concurring.

In my view, resolution of the issue before us requires only a straightforward application of Supreme Court precedent. Francis's argument is foreclosed by the Supreme Court's ruling in *Brown v. General Services Administration*, 425 U.S. 820 (1976). By its terms, 42 U.S.C. § 2000bb-1(c) would seem to provide Mr. Francis with a cause of action. That statute, however, is in tension with § 717 of Title VII, 42 U.S.C. § 2000e-16, which imposes several procedural requirements on a federal employee raising claims of employment discrimination that must be met before the employee can sue in federal district court. In *Brown*, 425 U.S. at 829, the Supreme Court held that Title VII provides "the exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," and, accordingly, Brown (the plaintiff in that case) could not enforce his right under 42 U.S.C. § 1981 to be free from racial employment discrimination without resort to that exclusive administrative and judicial scheme.

The Court gave two reasons for its holding in *Brown*. First, given the detail and comprehensiveness of the remedial scheme in § 717 of Title VII, the Court held that § 717 should supersede more general statutes under the canon of statutory interpretation that resolves tension between specific statutes and general statutes in favor of specific statutes. *Id.* at 834-35. ("The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that § 717(c) was designed merely to supplement other putative judicial relief."). Second, the Court explained that as a practical matter the entire Title VII remedial scheme for

21

federal employees would be undermined if a plaintiff could circumvent its procedural requirements by "the simple expedient of putting a different label on the pleadings." *Id.* at 833. Twice this term, the Supreme Court has cited *Brown* for both of the general principles explained therein. *See Hinck v. United States*, 127 S. Ct. 2011, 2015 (2007); *EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1767 (2007).

Both principles applied in *Brown* are equally applicable here, and they compel us to hold that Francis can enforce his religious discrimination claim only through resort to the administrative and judicial scheme created by Title VII.. First, RFRA's remedial statute is general, while Title VII's is comprehensive and specific. Although it does not appear that any court of appeals has yet addressed the effect of Title VII on RFRA, our court and others have applied *Brown* in other similar contexts, holding that Title VII requires compliance with its remedial scheme whenever a government employee seeks to enforce a right created by another statute that is secured by Title VII as well. *See, e.g., Ford v. West*, 222 F.3d 767, 772-73 (10th Cir. 2000) ("Plaintiff's [42 U.S.C.] § 1985(3) Fifth Amendment equal protection claim fails, however, because the Supreme Court has clearly held that Title VII provides the exclusive judicial remedy for discrimination claims in federal employment"); *Rivera-Rosario v. U.S. Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir. 1998) (rejecting plaintiff's claim under the Back Pay Act because "The Supreme Court has indicated that where the gravamen of the claim is Title VII discrimination, the only remedy available is under Title VII."); *Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987) ("Interpretation of

22

Title VII has shown that Title VII provides federal employees a remedy that "precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."); *Gissen v. Tackman*, 537 F.2d 784, 786 (3d Cir. 1976) (en banc) (applying *Brown* to foreclose a plaintiff's claims under 42 U.S.C. § 1985).[8]  Second, as was the case in *Brown*, if we allow Francis's claim to go forward, it would undermine the Title VII administrative and judicial scheme for federal employees claiming religious discrimination.  Federal employees like Francis, who allege religious discrimination, would have no need to exhaust their administrative remedies under Title VII if they could go directly to federal court with identical claims framed as RFRA claims.  *Brown*, 425 U.S. at 833 ("Under the petitioners theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible.").

_____

[8]As the Supreme Court noted in *Brown*, the canon of statutory interpretation that favors specific statutes over general statutes when the two are in tension applies regardless of the order of enactment of the statutes.  *Brown*, 425 U.S. at 834-35 (citing cases).  In *Owens*, we applied *Brown* to hold that Title VII foreclosed remedies otherwise available under § 1983, which was enacted after Title VII.  It is therefore of no consequence that RFRA was enacted in 1993, while § 717 of Title VII was enacted in 1972.

23

The language in RFRA providing that it applies to "all Federal law" and the implementation of that law, "whether statutory or otherwise," adopted before or after the passage of RFRA, 42 U.S.C. § 2000bb-3(a), is not inconsistent with this conclusion. While "all Federal law" must include Title VII, to say that RFRA "applies" to Title VII does not mean that RFRA must be interpreted to create an exception to the procedural requirements of Title VII, such that it would effectively supplant § 717 of Title VII whenever a federal employee alleges religious discrimination and could otherwise proceed under Title VII. Precisely how RFRA may "apply" to Title VII is not now before us, and it is enough to hold that it does not absolve Francis from complying with the requirements of Title VII's "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown*, 425 U.S. at 829.

Following *Brown*, I would hold, as the majority does, that Francis's claim was properly dismissed under Fed. R. Civ. P. 12(b)(6).

24